## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TODD A. FOX,                          ) | |
| )                                     | |
| Plaintiff,            ) | CIVIL ACTION |
| )                                     | |
| v.                                    ) | No. 14-4111-JWL |
| )                                     | |
| CAROLYN W. COLVIN,            ) | |
| **Acting Commissioner of Social Security,**   ) | |
| )                                     | |
| Defendant.            ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's fibromyalgia, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

## I.    Background

Plaintiff applied for DIB, alleging disability beginning May 16, 2011. (R. 59, 232). He exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the ALJ erred in evaluating

Plaintiff's medically determinable impairments at steps two and three of the sequential evaluation process and erred in the credibility determination, and he argues that the ALJ did not identify evidentiary support for the residual functional capacity (RFC) assessment and improperly evaluated the medical opinions.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

3

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred in evaluating Plaintiff's fibromyalgia and in explaining the ALJ's reliance on "objective factors" to discount the credibility of Plaintiff's allegations of symptoms, and to justify the assessment of limitations which are of limited severity.  Because the court finds that remand is necessary in these circumstances, it will not address the other errors alleged by Plaintiff.  Plaintiff may make his arguments in that regard on remand.

The court recognizes that in rather confusing arguments Plaintiff pointed to evidence which was not made a part of the administrative record by the Appeals Council, and to a video surveillance digital video disc (DVD) which was listed as an exhibit to a Cooperative Disability Investigation Report in the administrative record, but which was not itself made a part of the administrative record by either the ALJ or the Appeals Council, and he argues that sentence six of 42 U.S.C. § 405(g) permits the court to remand the case so that the Commissioner may admit that evidence and consider it in making her decision.  (Pl. Br. 20).  But, Plaintiff never requested a sentence six remand, and he sought remand for consideration of that particular evidence only as alternative relief--seeking both sentence six and sentence four remand if the court did not remand for an immediate award of benefits.  (Pl. Br. 32-33) (Reply 14).  The court is unaware of any

means to grant relief simultaneously pursuant to both sentence four and sentence six of 42 U.S.C. § 405(g), and Plaintiff does not suggest a means.  In any case, Plaintiff may seek to present the evidence at issue to the Commissioner on remand.

Finally, as noted above, the court recognizes that the primary relief sought by Plaintiff was "remand[] for an immediate award of benefits."  (Pl. Br. 32) (Reply 14).  However, other than the conclusory statement that "his claim is supported by the weight of the evidence," id.; and (Reply 14), Plaintiff provided no justification, argument, or legal authority for such relief, and has thereby waived any such argument.  Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived); Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)).

## II.    Evaluation of Fibromyalgia

As suggested by the court's discussion above, Plaintiff's arguments are neither well-organized nor particularly straightforward.  However, in his argument that the ALJ evaluated his claims improperly at steps two and three, Plaintiff argues that the ALJ overly emphasized the record evidence of somatoform disorder, and provided insufficient weight to the evidence of fibromyalgia when deciding that both impairments are severe within the meaning of the Act.  He concluded that argument with the assertion that the

ALJ failed "to consider the combined effect of all impairments, both severe and non-severe, throughout the disability determination process."  (Pl. Br. 10).

In his argument that the ALJ's credibility determination is not supported by substantial evidence because the ALJ provided excessive weight to the fact that most objective diagnostic testing in the case record was normal, Plaintiff argued that the symptoms of fibromyalgia are myriad and that most of his symptoms relate to fibromyalgia.  Id. at 11.  He points out that because there are no laboratory tests to identify fibromyalgia, it is often diagnosed by ruling out other disorders based upon normal testing regarding those disorders, and that consequently "normal physical and neurological findings and laboratory tests are typical in fibromyalgia cases."  Id. at 12. He argues, then, that "negative test results or the absence of an objective medical test to diagnose the condition 'cannot support' the ALJ's conclusion that [P]laintiff does not suffer from a disabling condition."  Id. (quoting Lantow v. Chater, No. 95-5262, 1996 WL 57602, *1 (10th Cir. Oct. 8, 1996)).  Plaintiff argues that the ALJ found Plaintiff "not credible due to 'the overwhelmingly negative diagnostic testing conducted throughout the period at issue,'" id. (quoting R. 69), and the ALJ noted that "[d]ue to his symptoms, the claimant underwent various objective diagnostic testing that failed to support the severity of the claimant's allegations."  (Pl. Br. 13) (quoting R. 67).  And, he argues that the ALJ discounted the treatment note findings regarding fibromyalgia made by Dr. Simon and Dr. Ruhlman because those notes also reflect normal testing.  Id.

Finally, Plaintiff included arguments regarding the ALJ's erroneous consideration regarding fibromyalgia in his argument that the ALJ improperly evaluated the medical opinions.  He argued that, "like the ALJ, the state agency physicians improperly attributed [P]laintiff's symptoms and complaints to a somat[o]form disorder or malingering" instead of fibromyalgia, and that it was therefore, error to accord significant weight to their opinions.  (Pl. Br. 27).  He argued that the ALJ failed to recognize that Dr. Simon explained that his opinion was based on the fact of Mr. Fox's fibromyalgia which had been confirmed by Dr. Ruhlman, and upon the limitations resulting therefrom.  Id. 28-29.

In response, the Commissioner argued that the ALJ found that Plaintiff had severe impairments including fibromyalgia.  She argued that because the ALJ found at step two that Plaintiff has impairments which are severe within the meaning of the Act and continued through the steps of the sequential evaluation process thereafter, "it is immaterial which [other] impairments the ALJ found to be severe at step two."  (Comm'r Br. 6).  She acknowledged that fibromyalgia does not lend itself to objective clinical findings, but argued that the physical limitations imposed by fibromyalgia are nonetheless susceptible "to objective analysis."  Id. at 8 (quoting Broadman v. Prudential Ins. Co. of Am., 337 F.3d 9, 16 n.5 (1st Cir. 2003) (quoted in Wilson v. Astrue, 602 F.3d 1136, 1143 (10th Cir. 2010)).  She argued that pursuant to the Social Security Ruling (SSR) regarding the evaluation of fibromyalgia, SSR 12-2p, the "ALJ reasonably considered the objective medical evidence showing that Plaintiff had largely normal strength and gait."  (Comm'r Br. 9) (citing SSR 12-2p, 2012 WL 3104869 at *5; see also West's Soc. Sec. Reporting

7

Serv., Rulings 460, at 465 (Supp 2015)).  And, the Commissioner concluded that it was reasonable for the ALJ to conclude that if Plaintiff's pain and fatigue were as limiting as he alleged, his strength and gait would be affected.  Id.

### A.    The ALJ's Findings and Discussion

As the parties agree, the ALJ found that Plaintiff has severe impairments including fibromyalgia.  (R. 61) (finding no. 3).  In discussing his RFC assessment, the ALJ summarized the medical evidence and noted that a treatment note in March 2012 from the Pain Management Institute where Plaintiff was treated by Dr. Simon "revealed that the claimant alleged tenderness in 17 of the 18 fibromyalgia trigger points, but maintained normal reflexes and nearly full strength throughout his upper and lower extremities."  (R. 67) (citing Ex. 18F/20).[1]  He also summarized a treatment note from Dr. Ruhlman at the Arthritis Specialists of Greater Kansas City, stating that "the doctor noted that the claimant alleged tenderness at 18 of 18 fibromyalgia trigger points."  (R. 67-68) (citing Ex. 17F/1, R. 586).  The ALJ also stated that "[b]y January 2013, treatment records indicate that the claimant again alleged tenderness in 18 of 18 fibromyalgia trigger points."  (R. 68) (citing Ex. 18F/28, R. 623).  This is an exhaustive listing of the ALJ's mention of fibromyalgia in the fourteen single-spaced pages of his decision.

### B.    Discussion

---

[1]This citation is apparently a typographical error and refers to a portion of the results of a nerve conduction study (NCS) dated October 22, 2012.  (Ex. 18F/20, R. 615).  The treatment note to which the ALJ apparently refers may be found at Ex. 18F/2, R. 597.

The Tenth Circuit has recognized that proving fibromyalgia is difficult and therefore "presents a conundrum for insurers and courts evaluating disability claims." Gilbert v. Astrue, 231 Fed. App'x 778, 783 (10th Cir. 2007) (quoting Welch v. UNUM Life Ins. Co. of Am., 382 F.3d 1078, 1087 (10th Cir. 2004). The Tenth Circuit has discussed fibromyalgia:

> Fibromyalgia, previously called fibrositis, is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003). The disease is "poorly-understood within much of the medical community [and] ... is diagnosed entirely on the basis of patients' reports and other symptoms." Benecke, 379 F.3d at 590. Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003); see also Brosnahan, 336 F.3d at 678 (objective medical evidence of fibromyalgia includes consistent trigger-point findings). Fibromyalgia can be disabling. Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).

As described by the Seventh Circuit:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

9

> Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (emphasis added [by the Tenth Circuit]).

Moore v. Barnhart, 114 Fed. Appx. 983, 991, 2004 WL 2634571 (10th Cir. Nov. 19, 2004).

The Sarchet court found error in the ALJ's decision because the rationale of the ALJ did "not build an accurate and logical bridge between the evidence and the results." Sarchet, 78 F.3d at 307. That is precisely what happened here.

As noted above, the ALJ here mentioned fibromyalgia a total of four times. Moreover, the ALJ here found that Plaintiff's allegations of symptoms were "not fully credible" (R. 66), and three of the instances in which the ALJ mentioned fibromyalgia imply that the medical records' notations of fibromyalgia were based solely on Plaintiff's allegations of tenderness at the fibromyalgia trigger[2] points. However, the medical records cited above and the procedure for evaluating the tender points do not indicate that the medical care providers relied solely on Plaintiff's "allegations."

The Sarchet opinion indicates that the tender points are considered positive if "when pressed firmly" they "cause the patient to flinch." 78 F.3d at 306. SSR 12-2p indicates that a "physician should perform digital palpation [of the tender point sites] with an approximate force of nine pounds," and that "[t]he physician considers a tender point

---

[2]SSR 12-2p and most of the court cases cited above refer to "tender points." West's Soc. Sec. Reporting Serv., Rulings 460, at 465 (Supp 2015); but see Brosnahan, 336 F.3d at 678 (objective medical evidence of fibromyalgia includes consistent trigger-point findings). But, the ALJ here refers to "fibromyalgia trigger points." (R. 67-68). The court considers the terms interchangeable.

to be positive if the person experiences any pain when applying this amount of pressure to the site."  West's Soc. Sec. Reporting Serv., Rulings 460, at 462-63 (Supp 2015).  The three medical records cited by the ALJ indicate respecively, that Plaintiff "was tender 17 out of 18 tender points.  He was negative only at the right lateral epicondyle" (R. 597), that "he had 18 of 18 fibromyalgia tender points" (R. 586), and the ALJ cited a pre-printed exam form reflecting "+18/18 tenderpts. [sic]."  (R. 623).  None of the treatment notes state that they were based on Plaintiff's allegations.  In fact, APRN Ruck's statement that Plaintiff was negative "at the right lateral epicondyle" (R. 597) suggests that the pressure test had actually been relied upon rather than Plaintiff's "allegations."

Moreover, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports."  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on a plaintiff's subjective allegations, the ALJ's conclusion to that effect is merely speculation which falls within the prohibition of McGoffin.  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).  A conclusion that the physician's opinion is based only on a plaintiff's subjective allegations must be based upon evidence taken from the physician's records.  Victory v. Barnhart, 121 Fed. App'x. 819, 823-24 (10th Cir. Feb. 4, 2005).

While the ALJ mentioned fibromyalgia four times in his decision, and three of those instances were, at the least, slanted, he also specifically mentioned "objective findings" as a basis for finding no disability five times.  He stated that "the objective

11

findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations."  (R. 67).  He noted that Plaintiff underwent "objective diagnostic testing that failed to support the severity of the claimant's allegations."  Id.  He discussed a doctor's note that there was "no neurological cause discovered for [Plaintiff's] complaints of widespread pain and weakness."  Id.  He stated that he gave significant weight to the opinion of the state agency physicians because "it is supported by the evidence indicating overwhelmingly negative diagnostic testing conducted."  Id. at 68.  He gave little weight to Dr. Simon's opinion because "it is inconsistent with the overwhelmingly negative diagnostic testing conducted."  Id. at 69.  And, he summarized his RFC assessment as being "supported by the objective medical evidence contained in the record."  Id.

Although each of these findings, in isolation, is at least technically supported by the record evidence, there is no indication in the decision that the ALJ realized or acknowledged that the symptoms, allegations, medical records, and medical opinions regarding fibromyalgia are consistent with negative findings on objective medical testing. In fact, a diagnosis of fibromyalgia would be inconsistent with symptoms which produce positive findings on objective medical testing.

The court may not determine the issue of disability in the first instance, and it does not presume to suggest that on remand the Commissioner must find that Plaintiff's fibromyalgia is, or is not, disabling.  But, remand is necessary for the Commissioner to acknowledge that Plaintiff's symptoms, and certain of the opinions of the medical care

providers are in fact consistent with negative objective testing, support a diagnosis of

fibromyalgia, and at least have a tendency to support a finding that Plaintiff is disabled.

After acknowledging these circumstances which are present here, the Commissioner must

then "build an accurate and logical bridge between the evidence and the results," of her

decision as suggested by the <u>Sarchet</u> opinion.  78 F.3d at 307.

    **IT IS THEREFORE ORDERED** that the Commissioner's decision shall be

REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

    Dated this 13th day of January 2016, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum      </u>
**John W. Lungstrum**
**United States District Judge**